# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

SABA BAPTISTE-ALKEBUL-LAN,

      Plaintiff,

v.                                   Case No: 8:21-cv-1751-CEH-JSS

RALPH SMITH and COMPUTER
MENTORS GROUP, INC.,

      Defendants.

_____/

## O R D E R

This matter comes before the Court on Defendant CMG's Motion to Dismiss Third Amended Complaint (Doc. 65). In the motion, Defendant Computer Mentors Group, Inc. ("CMG") requests dismissal with prejudice of Plaintiff's Third Amended Complaint. Defendant Ralph Smith filed a joinder in CMG's motion. Doc. 70. Plaintiff filed a response in opposition. Doc. 74. Also pending is Defendant Ralph Smith's Motion to Dismiss Ralph Smith Personally from this Lawsuit with Prejudice and Motion to Dismiss Plaintiff's Third Amended Complaint with Prejudice. Doc. 130. Plaintiff filed a response in opposition. Doc. 131. The Court, having considered the motions and being fully advised in the premises, will grant, in part, CMG's motion to dismiss (Doc. 65) and dismiss Plaintiff's age discrimination claim. Defendant Ralph Smith's joinder (Doc. 70) in the motion to dismiss will be granted as he may not be

sued as an individual under the statutes alleged. Smith will be dismissed as a party to this action.[1]

## I.    BACKGROUND[2]

Plaintiff, Saba Baptiste-Alkebul-Lan, proceeding *pro se*,[3] initiated this action July 20, 2021, by filing a complaint against Ralph Smith ("Smith") as executive director of Computer Mentors Group, her former employer, for alleged discrimination under Title VII, the Americans with Disabilities Act and/or the Age Discrimination in Employment Act. Doc. 1 at 3. At the same time, Plaintiff filed an application to proceed in court without prepaying fees, which the Court construed as a motion to proceed *in forma pauperis*. Doc. 2. Before the Court considered Plaintiff's motion, Plaintiff filed an Amended Complaint (Doc. 5), wherein she named Computer Mentors Group, Inc. ("CMG"), as Defendant, instead of Smith. On October 7, 2021, the Magistrate Judge issued a report recommending that Plaintiff's Amended

---

[1] Because Smith's second motion to dismiss (Doc. 130) was filed untimely, that motion is due to be stricken.

[2] The following statement of facts is derived from the Third Amended Complaint (Doc. 11), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

[3] The Court encourages *pro se* parties to consult the "Litigants Without Lawyers" guide on the Court's website, located at http://www.flmd.uscourts.gov/litigants-without-lawyers. Litigation in federal court is difficult and requires timely compliance with applicable rules, including the Federal Rules of Civil Procedure, the Local Rules, the Federal Rules of Evidence, and several procedural, discovery, and other orders. A judge cannot assist a party, even a *pro se* party, in conducting an action. Therefore, Plaintiff is strongly advised — before further prosecuting this action — to obtain legal advice and assistance from a member of The Florida Bar. To the extent Plaintiff intends to continue to represent herself in this matter, she should familiarize herself with both the Federal Rules of Civil Procedure and the Local Rules for the Middle District of Florida, which can be viewed on the Court's website at https://www.flmd.uscourts.gov/local-rules.

Complaint be dismissed without prejudice for, among other reasons, being a shotgun pleading, failing to plead a short and plain statement establishing she is entitled to relief, and failing to plead her allegations in separate, numbered paragraphs. Doc. 6. No objection to the report and recommendation was filed. The Court adopted the report and recommendation, denied the motion to proceed without prepaying fees, and granted Plaintiff the opportunity to file an amended complaint. Doc. 7. On October 29, 2021, Plaintiff filed a second amended Complaint and another motion to proceed *in forma pauperis*. Docs. 8, 9. The Magistrate Judge issued a report recommending the motion to proceed *in forma pauperis* be denied without prejudice and Plaintiff's Second Amended Complaint be dismissed. Doc. 10. Before the Court ruled on the report and recommendation, Plaintiff filed a Third Amended Complaint. Doc. 11. Ultimately, the motion to proceed *in forma pauperis* was granted (Doc. 13), and the Third Amended Complaint became the operative complaint.

In her Third Amended Complaint, Plaintiff sues Smith and CMG. Doc. 11. She alleges six claims against Defendants arising out of her employment with CMG: (1) discrimination based on gender; (2) discrimination based on race; (3) discrimination based on age; (4) discrimination based on gender and whistleblower; (5) discrimination based on whistleblower and retaliation; and (6) discrimination based on gender, age, pay, and retaliation. *Id.*

In September 2017, Smith contacted Plaintiff to offer her the job of Program Director, at CMG. Doc. 11 at 11. When she started as CMG's program director, the company was underperforming. *Id.* Under her leadership, she increased site

3

expansions 400% serving over 400 families, exceeded benchmarks, and increased income. *Id.* She worked there 2.8 years. *Id.*

While she was employed with CMG, Plaintiff was denied evaluations and pay raises because she is a woman. Doc. 11 at 6. For two years she did not receive annual evaluations, which impeded her opportunity to earn increased income. *Id.* Defendant Smith made negative comments toward females, including Plaintiff. *Id.* Smith made derogatory comments about his former wife wanting all his money and not wanting to work. *Id.* Two months after Plaintiff was hired as program director, Smith ordered her to hire Nijel Dukes as the Teen Tech program manager even though Smith knew Dukes was unqualified. *Id.* Smith treated men and women differently, including not disciplining a former male employee, Shawn Wilkinson, who was accused by another employee of inappropriate sexual conduct. *Id.*

Plaintiff received resistance from Shawn Wilkinson who did not want to be trained by Plaintiff. Plaintiff confronted Wilkinson about it and learned he was disgruntled because Smith had promised him the program director position that Plaintiff held. *Id.* Wilkinson told her that Smith wanted a man in the position because a man can perform the job better than a woman. *Id.* Wilkinson told her the last female program director "ran off crying." *Id.* Smith was "tired of woman drama from the last program director" and he preferred that a man be in the position of program director. *Id.*

Plaintiff alleges Smith applied for paycheck protection program (PPP) with all the employees listed on the application even though 90% of the staff had already

secured salaries from the Children Board of Hillsborough County. *Id.* at 7. According to Plaintiff, Smith applied in May 2020 for a second PPP and was approved for 13 employees. *Id.* One of the employees included in the second application was Preston Ingram, who had been terminated because he was lazy and not a good grant writer. *Id.* The CMG Board Chair insisted that Smith hire Ingram back. *Id.* Plaintiff later learned that Ingram is the best friend of the Board Chair's nephew. *Id.*

In her claim for discrimination based on race, Plaintiff alleges Smith stated several times that Plaintiff would not be the face of the organization because she was not a white woman. *Id.* Smith did not want the public to think the organization was a black organization because of the black leadership. *Id.*

In her claim for age discrimination, Plaintiff alleges she is 57 years of age, is an expert in her profession, and has maintained education and training at very high levels. *Id.* Plaintiff was terminated by CMG on June 17, 2020, and she was provided with a Separation Agreement on July 30, 2020, that had to be signed by August 7, 2020, but she was denied the time to seek legal counseling regarding the Agreement. *Id.*

Plaintiff alleges that in 2018 and 2019 Smith would only come into the office half days on Mondays and the remainder of the week he was out campaigning for public office while Plaintiff had to perform all the leadership positions, which required excessive hours weekdays and weekends for which she received no additional compensation. *Id.* She asserts she worked 50 hours per week and many weekends. *Id.* at 8. She managed and supervised 22 employees. *Id.*

In her claim for discrimination "based on gender and whistleblower," Plaintiff alleges she complained to the Board Chair, Santo Cannone, about Smith's declining health, erratic behavior, memory loss, operational concerns including misplacement of funds and an inability to manage the Children Board of Hillsborough County's budget. *Id.* at 8. Cannone asked Plaintiff to keep their conversations confidential, but then the Board told Smith what Plaintiff said and they did not protect Plaintiff from Smith's retaliation. *Id.*

In July or August 2019, Smith called Plaintiff into his office and told her he could not account for $100,000 from the budget. *Id.* Plaintiff relayed this to the Board along with Smith's memory loss, his extreme anger, and accusatory behavior. *Id.* Plaintiff felt an ethical obligation to keep the Board informed of these issues, but they offered her no support, and Smith became angry with her when he learned she went to the Board about him. *Id.*

In November 2019, Smith took an unannounced vacation and did not update the database with new matrix requirements before he left. Doc. 6 at 9. When he returned from vacation, he still did not update the matrix. *Id.* In May or June 2020, Smith accused Plaintiff of not submitting annual budget input, of not informing him of the matrix changes and the need for the database to be updated, and of sedition. *Id.* Smith was paranoid, insecure and attacked Plaintiff's abilities. *Id.*

On May 19, 2020, Smith presented Plaintiff with her performance evaluation form, which she disputed. Doc. 11 at 10. The evaluation was accusatory and inaccurate. *Id.* Plaintiff and Smith met three more times over the next month, but she

refused to sign the performance evaluation because of its inaccuracy, and she wanted to speak with the Board about it, but Smith was angry and refused to allow her to speak to the Board about her evaluation. *Id.* at 10. When Plaintiff refused to sign the evaluation, Smith terminated her. *Id.* at 11. She alleges that leading up to that day, there were too many hostile workplace incidences to count, but she did not leave the job previously because she was a single mother with no other source of income. *Id.*

On July 30, 2020, CMG provided Plaintiff with a Separation Agreement ("Agreement") to be signed by August 7, 2020. Doc. 11 at 7. Plaintiff signed the Agreement, but she alleges she was denied the time to seek legal counseling before signing the Agreement. *Id.* The Agreement states that Plaintiff was employed as CMG's Program Director and that her employment was terminated effective June 17, 2020. Doc. 65-1. Pursuant to the Agreement, Plaintiff and CMG agreed to the following terms:

> A.    This Agreement shall not in any way [be] construed as an admission of Computer Mentors Group that it has acted wrongfully with respect to you or any other person acting on your behalf, or that you have any rights whatsoever against Computer Mentors.
>
> B.    In exchange for the promises contained in this Agreement and release of claims described below, provided that you sign this agreement and return it to the Company on or before close of business at 5pm on the 7th day of August, 2020, Computer Mentors Group, Inc. will pay you a severance allowance in the amount of your current base monthly salary of Five Thousand Four Hundred Eighty Six dollars and 25 cents ($5,486.25) beginning on the 9th day of August 2020, and ending on the 7th day of November 2020, to be paid on a bi-weekly basis and

in accordance with Computer Mentors Group's normal payroll process.

C.    In consideration of the promises contained in this Agreement, you agree: Neither you nor Computer Mentors Group, Inc. shall make any oral or written statement about the other party which is intended or reasonably likely to disparage the other party, or otherwise degrade the other party's reputation in the community.

D.    You, on behalf of yourself and anyone claiming through you, irrevocably and unconditionally release, acquit an forever discharge Computer Mentors Group, Inc. and/or its successors and assigns, as well as their past and present officers, directors, employers, shareholders, trustees, joint ventures, partners, and anyone claiming through them (collectively referred to as Releasees), in their individual and/or corporate capacities, from any and all claims, liabilities, promises, actions, damages and the like, known or unknown, which you may have ever had against any of the Releasees arising out of or relating to your employment with Computer Mentors Group, Inc. and/or the termination of your employment with Computer Mentors.

E.    That you shall not pursue any legal action against any of the Releasees for any claim waived and released under this Agreement and that you represent and warrant that no such claim has been filed to date. You further agree that should you bring any type of legal and/or administrative action arising out of any claims waived under this Agreement, you will be responsible for all legal fees and costs, including those of the Releasees.

F.    You agree that you will not, directly or indirectly, disclose the facts and/or terms of this Agreement, including the severance benefits, to anyone other than your attorney, except to the extent such disclosure may be required for accounting or tax reporting purposes or otherwise required by law.

G.    Even if you do not sign this Agreement, Computer Mentors Group, Inc. will pay you the compensation that you have earned through the date of your termination and any accrued vacation benefits.

Doc. 65-1. The Agreement was signed by Plaintiff on August 7, 2020. *Id.*

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.   *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient.   *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face."  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citation omitted).  The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint.  *Id.*

## III.   DISCUSSION

### A.   Smith's Motion to Dismiss (Doc. 130) is Untimely

On November 16, 2022, Defendant Smith filed a motion to dismiss (Doc. 130) Plaintiffs' Third Amended Complaint (Doc. 11). The Third Amended Complaint was served December 5, 2021. Federal Rule of Civil Procedure 12 sets forth the timing requirements for a responsive pleading served by a defendant. Defendant Smith's motion should have been served within twenty-one (21) days of being served with the

Third Amended Complaint. Defendant's motion, filed nearly a year after the Third Amended Complaint was served, is, therefore, untimely.[4] And Defendant Smith did not seek an extension of time. Smith has already responded to the Third Amended Complaint by his joinder in CMG'S motion to dismiss (Doc. 70) and his answer (Doc. 39). Accordingly, the untimely motion is due to be stricken.

### B.    Plaintiff's Title VII and ADEA Claims are Not Time-Barred

In order for a plaintiff to maintain a Title VII claim against her employer, she has the initial burden of establishing that she filed her Complaint within ninety days of her receipt of the EEOC's right-to-sue letter. *See Green v. Union Foundry Co.*, 281 F.3d 1229, 1233–34 (11th Cir. 2002) (citing 42 U.S.C. § 2000e–5(f)(1) (1994); *Santini v. Cleveland Clinic Fla.*, 232 F.3d 823, 825 (11th Cir. 2000)). Once the defendant contests this issue, the plaintiff has the burden of establishing that she met the ninety-day filing requirement. *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982).

Here, CMG argues that all of Plaintiff's claims are untimely because she did not sue CMG within 90 days of the EEOC's right-to-sue letter. Under Title VII, in cases where the EEOC does not file suit, the EEOC "shall so notify the person aggrieved and within 90 days after the giving of such notice a civil action may be brought against

---

[4] Motions to dismiss based upon the court's subject matter jurisdiction may be raised at any time, but there has been no challenge to the court's subject matter jurisdiction. The motion is purportedly filed pursuant to Federal Rule of Civil Procedure 12(b)(2). Federal Rule of Civil Procedure 12(b)(2) governs motions to dismiss for lack of personal jurisdiction. In any event, there is no indication that Smith is a non-resident defendant. Rather, the challenges raised by Smith appear to be due to a failure to state a claim, Fed. R. Civ. P. 12(b)(6).

the respondent named in the charge . . . by the person claiming to be aggrieved . . . ." 42 U.S.C. § 2000e–5(f)(1). Similarly, under the ADEA, "a civil action may be brought . . . within 90 days after the date of the receipt of . . . notice [of dismissal of the charge]." 29 U.S.C. § 626(e).

The EEOC right-to-sue letter is dated April 12, 2021. Doc. 1-1. Plaintiff attaches the letter to her initial Complaint (Doc. 1-1). *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Even though Plaintiff does not attach the letter to her Third Amended Complaint, the Court may appropriately consider this document, which is also attached to the motion to dismiss, without converting the motion to one for summary judgment because the document is central to Plaintiff's claims and is undisputed. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

Based on the April 12, 2021 EEOC letter, CMG contends that Plaintiff sued Defendant Smith 99 days after the EEOC issued its right-to-sue letter and sued CMG in her Amended Complaint 114 days after the letter issued, both of which CMG argues are untimely. According to Plaintiff, she did not receive the EEOC's letter until April 21, 2021. Doc. 74 at 3. In support, she attaches a copy of an EEOC envelope date-stamped April 20, 2021 and on which is hand-written "Received April 21, 2021."[5] Doc. 74-1. For purposes of the instant motion, the Court accepts Plaintiff's

---

[5] There is no record evidence as to who wrote "Received April 21, 2021," on the envelope. Notwithstanding, it is reasonable to conclude that given a postage date stamp of April 20, 2021 on the envelope, the earliest Plaintiff could have received the letter is April 21, 2021.

representation that she received the EEOC Right-to-Sue letter on April 21, 2021. The Eleventh Circuit has held that "statutory notification is complete only upon actual receipt of the suit letter" by a plaintiff. *Zillyette v. Cap. One Fin. Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999) (citations omitted). Thus, for purposes of calculating the timeliness of Plaintiff's claims, the starting point is the date the letter was actually *received* by Plaintiff— April 21, 2021. Calculating from that date, Plaintiff initiated this suit on the 90th day on July 20, 2021.[6] Thus, the claims under Title VII and the ADEA against Smith would not necessarily be time-barred.[7]

Although the docket text indicates that only Smith was sued in Plaintiff's initial complaint filed July 20, 2021, a closer look at the Complaint reveals Plaintiff may have intended to sue the entity, Computer Mentors Group. Doc. 1. In that regard, the caption of the Complaint lists as "Defendant(s)": "Ralph Smith, Computer Mentors Group." Doc. 1 at 1. In the jurisdiction section of the form Complaint, the Plaintiff has the choice of completing the information if the defendant is an individual

---

[6] Plaintiff contends she sued on the 88th day, arguing that the Court should exclude from calculation the two intervening holidays. Plaintiff is incorrect. When a period of time is stated in days, time shall be calculated by counting "every day, including intermediate Saturdays, Sundays, and legal holidays," unless the last day is a Saturday, Sunday, or legal holiday in which case the time period runs until the next day that is not a Saturday, Sunday, or legal holiday. *See* Fed. R. Civ. P. 6(a)(1). Regardless, Plaintiff sued Smith on the 90th day, which would be timely.

[7] The Court also notes that Smith never raised untimeliness of Plaintiff's claims in his Answer filed March 28, 2022, and thus, arguably waived the argument. Doc. 39. "[C]onditions precedent to a Title VII action are not jurisdictional prerequisites," and may be waived. *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982); *see Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling").

(paragraph II.B.2.a.) or if the defendant is a corporation (paragraph II.B.2.b.). *Id.* at 3, 4. Plaintiff identifies the Defendant as a corporation named "Computer Mentors Group, Inc." *Id.* at 4. In her allegations, Plaintiff alleges "Computer Mentors Group caused financial hardship in denying progressive salary, retirement funding removed, and overall livelihood." *Id.* 4–5. The caption on the accompanying motion to proceed *in forma pauperis* filed on the same date lists "Computer Mentors Group" as the Defendant. *See* Doc. 2.

Plaintiff amended her complaint on August 4, 2021, specifically naming CMG as a party Defendant and dropping Smith as a party. "When a plaintiff amends a complaint to add a defendant, but the plaintiff does so after the running of the relevant statute of limitations, then Rule 15(c)(3) controls whether the amended complaint may 'relate back' to the filing of the original complaint and thereby escape a timeliness objection." *Powers v. Graff*, 148 F.3d 1223, 1225 (11th Cir. 1998) (quoting *Wilson v. United States*, 23 F.3d 559, 562 (1st Cir. 1994)).

Relevant here, Rule 15(c)(1)(C), Federal Rules of Civil Procedure, provides that an amendment that changes the party or the name of a party against whom a claim is asserted relates back to the original pleading if Rule 15(c)(1)(B)[8] is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:

---

[8] Rule 15(c)(1)(B) provides that an amended pleading relates back if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading."

(i) received such notice of the action that it will not be prejudiced in defending on the merits; and

(ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1)(C).

Plaintiff has the burden of showing that these requirements are satisfied. *Green*, 281 F.3d at 1234. "The purpose of Rule 15(c) is to permit amended complaints to relate back to original filings . . . when the amended complaint is correcting a mistake about the identity of the defendant." *Powers*, 148 at 1226. An amended complaint cannot relate back to an initial complaint, however, where the plaintiff knew the identity of the newly named party at the time the initial complaint was filed and deliberately chose not to sue that party in the initial complaint. *See id.* ("[E]ven the most liberal interpretation of 'mistake' cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset.") (quoting *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992)); *Powers*, 148 F.3d at 1227 (noting that Rule 15(c) deals with the problem of a misnamed defendant, not with a situation where the plaintiff was fully aware of the potential defendant's identity but not of its responsibility for the harm alleged); *Shea v. Esensten*, 208 F.3d 712, 720 (8th Cir. 2000) (holding that the plaintiff was not mistaken, and thus Rule 15(c) was not satisfied, where the plaintiff knew of the identity of the added party but not the organizational relationship between the parties at the time the initial complaint was filed).

Clearly, Plaintiff knew the identity of Computer Mentors Group when drafting her initial Complaint. Thus, at first blush an argument can be made that the Amended

Complaint should not relate back, but the Court cannot say that Plaintiff deliberately chose not to name CMG in her initial filing. And construing *pro se* plaintiff's pleadings liberally, it appears she did attempt to name CMG as a party defendant in her initial Complaint as discussed above. *See Tannenbaum v. United States*,148 F.3d 1262, 1263 (11th Cir. 1998) (holding that pleadings from *pro se* litigants are held to a less stringent standard than pleadings drafted by attorneys). The Court finds Plaintiff's inartful initial Complaint attempted to name CMG as a Defendant and the Plaintiff's Amended Complaint would relate back to the initial filing such that the claims brought against CMG would not be time-barred.

### C.  Claims Against Smith Individually Fail

Plaintiff sues Smith individually as Executive Director of CMG. Doc. 11. Notwithstanding the timing arguments, Plaintiff's claims of discrimination against Smith fail as a matter of law. Individual defendants are not amenable to private suit and personal liability for employment discrimination under the Americans With Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq*.; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.; and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq. See Albra v. Advan, Inc.*, 490 F.3d 826, 829–30 (11th Cir. 2007); *see also Dearth v. Collins*, 441 F.3d 931, 933 (11th Cir. 2006) (relief under Title VII is available against only the employer and not against individual employees regardless of whether the employer is a public entity or a private company); *Shotz v. City of Plantation, Fla*., 344 F.3d 1161, 1172 (11th Cir. 2003)

(individual liability precluded for violation of ADA anti-discrimination provision in employment); *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996) (ADA does not provide for individual liability, only for employer liability); *Smith v. Lomax*, 45 F.3d 402, 403 n. 4 (11th Cir. 1995) (individual defendants could not be held liable in their individual capacities under the ADEA or Title VII); *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991) (individual capacity suits under Title VII are inappropriate; relief is to be found from the employer). Plaintiff's claims against Smith seek to impose individual liability and such relief is not available under these statutes. Relief, if any, is against the employer, not an individual. The claims against Smith individually are properly dismissed, as a matter of law.

### D. CMG's Release Argument Fails on the Instant Motion

In addition to its timeliness argument (which the Court has rejected), CMG argues Plaintiff released all of her claims, except her age discrimination claim.[9] Because Plaintiff referenced the Separation Agreement in her Third Amended Complaint, CMG submits that the Agreement appears on the face of Plaintiff's Complaint such that it may properly be considered by the Court on CMG's motion to dismiss.

---

[9] CMG concedes that the Separation Agreement was ineffective as to the waiver of an age discrimination claim because it did not comply with the Older Worker Benefit Protection Act ("OWBPA"). Doc. 65 at 8 n.5, 9. "In order to obtain knowing and voluntary releases [of an ADEA claim], employers must meet the OWBPA's specific requirements, including its requirement that the employer provide information about the ages of discharged and retained workers to employees considering releasing potential ADEA claims." *Burlison v. McDonald's Corp.*, 455 F.3d 1242, 1245 (11th Cir. 2006). CMG nevertheless argues Plaintiff's age discrimination claim fails to state a claim under the ADEA.

According to CMG, Plaintiff voluntarily and intentionally waived any right to claims under Title VII and the EPA by executing the Separation Agreement, which provided her with substantial compensation in exchange for the release of those claims. "To release a cause of action under Title VII, 'the employee's consent to the settlement [must be] voluntary and knowing' based on the totality of the circumstances." *Myricks v. Fed. Reserve Bank of Atlanta*, 480 F.3d 1036, 1040 (11th Cir. 2007) (quoting *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 52 n. 15 (1974)). The Eleventh Circuit explains that the totality of the circumstances surrounding the signing of a release requires a court to review several objective factors:

> the plaintiff's education and business experience; the amount of time the plaintiff considered the agreement before signing it; the clarity of the agreement; the plaintiff's opportunity to consult with an attorney; the employer's encouragement or discouragement of consultation with an attorney; and the consideration given in exchange for the waiver when compared with the benefits to which the employee was already entitled.

*Myricks*, 480 F.3d at 1040 (citing *Puentes v. United Parcel Serv. Inc.*, 86 F.3d 196, 198 (11th Cir. 1996)).

In response to the motion to dismiss, Plaintiff argues that she never received a copy of the *fully executed* Separation Agreement that was signed by CMG and therefore claims that she was unaware if she was bound by the Agreement. Doc. 74 at 2–3. This argument is unavailing. Plaintiff does not dispute that she received the Separation Agreement from CMG, signed it, and received the severance payment from CMG. She attaches to her response a copy of the Separation Agreement that she signed on

17

August 7, 2020. Doc. 74-2.  Defendant provides a fully signed copy of the agreement. Doc. 65-1.

Plaintiff also argues that she had less than ten days to respond to the Separation Agreement. In the Third Amended Complaint, Plaintiff alleges she was denied the time to seek legal counseling prior to signing the agreement. Doc. 11 at 7. Defendant submits that Plaintiff is educated, with a doctoral degree and twenty years of education. Doc. 65 at 8 (citing Doc. 65-1, Doc. 9 at 5). Defendant further contends Plaintiff's execution of the release was knowing and voluntary as the Separation Agreement gave Plaintiff a full week to consider it and she accepted three months' salary in consideration for signing it.

An affirmative defense, such as release or waiver, may be raised in a Rule 12(b)(6) motion to dismiss only if the defense is apparent on the face of the complaint. *Hudson Drydocks Inc. v. Wyatt Yachts Inc.*, 760 F.2d 1144, 1146 n.3 (11th Cir. 1985) (citing *White v. Padgett*, 475 F.2d 79, 82 (5th Cir.), *cert. denied*, 414 U.S. 861 (1973)). Because Plaintiff references the Separation Agreement in the Third Amended Complaint, CMG argues that the release appears on the face of the complaint and is therefore incorporated by reference making it part of the pleadings for purposes of the motion to dismiss. Doc. 65 at 7. It is not readily apparent that Plaintiff's passing reference to the Separation Agreement in the Third Amended Complaint establishes that the Agreement appears on the face of the complaint such that it may be considered in its entirety on the instant motion. The allegations related to the Separation Agreement are minimal, referencing only that CMG provided the Separation

Agreement to her which she had to sign by August 7, 2020, but was denied time to seek legal counseling. Doc. 11 at 7. "The allegations in the complaint must be accepted as true and construed in the light most favorable to the plaintiff." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 694 (11th Cir. 2016) (citing *Ironworkers Local Union 68 v. AstraZeneca Pharm.*, LP, 634 F.3d 1352, 1359 (11th Cir. 2011)). Thus, even if the Court finds that it may appropriately consider the release language contained within the Separation Agreement on the instant motion, the allegations of the Third Amended Complaint undermine CMG's argument that the release was entered into knowingly and voluntarily. Considering the totality of the circumstances, a fact-based determination, in a light favorable to Plaintiff, the motion to dismiss based on release is due to be denied at this stage of the litigation.[10]

### E.   ADEA Claim against CMG

CMG argues that Plaintiff's age claim fails because it is untimely; Plaintiff fails to allege that CMG is an "employer" as defined under the ADEA; and Plaintiff fails to state a claim for age discrimination. Doc. 65 at 9. In her response, Plaintiff only responds to the timeliness argument. Doc. 74. Each argument is addressed in turn. As discussed above, the Court finds that, on the record before it, Plaintiff timely filed her claims against Defendants, and thus the Court declines to conclude the claims are time-barred.

---

[10] By the Court's ruling on the instant motion, CMG is not precluded from raising the applicability of the release as a bar to Plaintiff's claims on a more fully developed record at the summary judgment stage of this litigation.

Under 29 U.S.C. § 630, the term "employer" is defined as "a person engaged in an industry affecting commerce who has twenty or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year." 29 U.S.C. § 630(b). Plaintiff's allegations as to CMG's status as an employer for purposes of the ADEA are not entirely consistent.[11] But, in a light favorable to the Plaintiff, she alleges that she supervised 22 employees (Doc. 11 at 7), which would exceed the twenty-employee threshold. Additionally, Plaintiff alleges she was employed by CMG. Because Plaintiff alleges that she was an "employee," and "employee" is defined in reference to "employer" under the ADEA, the Court can infer that Plaintiff has pleaded (albeit by implication) that CMG is an "employer" under the ADEA. *See Booher v. Turtle Cove Marina Condo. Ass'n, Inc.*, No. 8:14-CV-3158-CEH-EAJ, 2015 WL 4751578, at *4 (M.D. Fla. Aug. 11, 2015) (finding plaintiff adequately alleged defendant was an employer for purposes of Title VII claim where plaintiff alleged she was employed by defendant); *Bialek v. Delvista Towers Condo. Ass'n, Inc.*, 994 F.Supp.2d 1277, 1280 (S.D. Fla. 2014) (denying defendant's motion to dismiss for failure to allege defendant was "employer" where Title VII plaintiff alleged that she was an "employee" of defendant). Therefore, Plaintiff has adequately alleged

---

[11] On the one hand, Plaintiff alleges she supervised 22 employees (Doc. 11 at 8), but in another paragraph she states that 90% of the staff, including herself, secured salaries from a different entity (Doc. 11 at 7, 8). In another allegation, Plaintiff alleges that when CMG applied for a PPP loan, it identified 13 employees on its application, and at least one had been terminated at the time the application was submitted. Doc. 11 at 7.

CMG's status as an employer under the ADEA and the motion to dismiss is due to be denied on this basis.

Lastly, CMG argues Plaintiff's allegations are conclusory and do not satisfy the pleadings standards established by *Twombly* and *Iqbal*. The ADEA prohibits an employer from discharging, or otherwise discriminating against, an employee because of her age if she is at least 40 years of age. 29 U.S.C. §§ 623(a)(1), 631(a). "To sufficiently plead an ADEA claim, Plaintiff must allege facts plausibly establishing that her age was a 'but-for' cause of her termination." *Pinkney v. Maverick Condo. Ass'n, Inc.*, No. 6:1 l-cv-241-PCF-DAB, 2011 WL 2433505, at *2 (M.D. Fla. 2011) (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176 (2009)). Plaintiff is 57 years old and was terminated in June 2020. Doc. 11 at 7. She alleges that she was terminated in the middle of the Covid-19 pandemic while another employee, Preston Ingram, who was previously terminated, was subsequently re-hired because he is the best friend of the Board Chair's nephew. Doc. 11 at 8. Although Plaintiff alleges that Ingram is 22 years old, she indicates he was terminated initially because he was lazy and not a good grant writer. Plaintiff's allegations support he was re-hired due to familial connections, or possibly because he was included as an employee when CMG applied for a PPP loan.[12] There appears no allegation or indication that Ingram was re-hired to replace Plaintiff. Plaintiff fails to allege any ultimate facts to demonstrate her age was the "but-for" cause of her termination. As such, the ADEA claim is due to be dismissed for failing

---

[12] Plaintiff alleges that Smith terminated Preston Ingram, who appeared on the PPP application, and the Board insisted that Smith rehire Preston Ingram back.

to state a claim. Because Plaintiff has amended her complaint three times making the Third Amended Complaint her fourth attempt, *see* Docs. 1, 5, 8, 11, and Plaintiff does not request in her response any further leave to amend, the ADEA claim will be dismissed without leave to amend. Accordingly, CMG's motion to dismiss will be granted as to Plaintiff's claim of discrimination based on age. It is hereby

  **ORDERED**:

  1. Defendant CMG's Motion to Dismiss Third Amended Complaint (Doc. 65) is **granted-in-part** and **denied-in-part**. The motion is granted as to Plaintiff's claim of age discrimination. In all other respects, the motion is denied.

  2. Defendant Smith's Joinder (Doc. 70) in CMG's motion to dismiss is **granted**.  All claims against Defendant Ralph Smith are **dismissed**.

  3. The docket clerk is directed to terminate Defendant Ralph Smith as a party to this action.

  4. Defendant CMG is directed to file its answer to the claims in Plaintiff's Third Amended Complaint, except the age discrimination claim, within **FOURTEEN (14) days** of this Order.

  5. Smith's Motion to Dismiss Ralph Smith Personally (Doc. 130) is **STRICKEN** as untimely.

**DONE AND ORDERED** in Tampa, Florida on December 9, 2022.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record
Unrepresented Parties